IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DOROTHEA L. TOWNSEND,          )
                              )
            Plaintiff,        )
                              )
v.                            )        Case No. CIV-10-160-KEW
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

OPINION AND ORDER

Plaintiff Dorothea L. Townsend (the "Claimant") requests
judicial review of the decision of the Commissioner of the Social
Security Administration (the "Commissioner") denying Claimant's
application for disability benefits under the Social Security Act.
Claimant appeals the decision of the Administrative Law Judge
("ALJ") and asserts that the Commissioner erred because the ALJ
incorrectly determined that Claimant was not disabled.  For the
reasons discussed below, it is the finding of this Court that the
Commissioner's decision should be and is REVERSED and REMANDED for
further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries:   first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.   Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).   The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).   The court may not re-weigh the evidence nor substitute its discretion for that of the agency.   Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."   Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on December 14, 1967 and was 41 years old at the time of the ALJ's decision.   Claimant completed her high school education and some college.   Claimant worked in the past as a registered nurse, cashier, and seamstress.   Claimant alleges an

inability to work beginning June 16, 2006 due to limitations arising from seizures, depression, and anxiety.

## Procedural History

On April 17, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 19, 2009, an administrative hearing was held before ALJ Osly F. Deramus in Paris, Texas. On October 2, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On January 15, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a registered nurse, cashier, and seamstress.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in:  (1) relying on outside sources of information for authority and thereby depriving Claimant of her due process rights; (2) failing to find Claimant met a listing; (3) failing to properly evaluate all of the medical source opinions; (4) his step four evaluation; and (5) engaging in an improper credibility evaluation.

## Due Process Violation

Claimant contends the ALJ violated her due process rights by relying upon legal authority and treatises and not giving her a chance to rebut these sources.  In his decision, the ALJ cited to the *Diagnostic and Statistical Manual of Mental Disorders* as well as two cases from the Tenth Circuit Court of Appeals concerning consideration of a claimant's GAF.  (Tr. 14).  The cases which find a violation of a claimant's due process rights typically concern substantive evidence that is developed outside the presence of the claimant or her representative such that cross-examination is not permitted.  *See,* Yount v. Barnhart, 416 F.3d 1233, 1235 (10th Cir. 2005).  The legal authority is what it is, regardless of Claimant's participation.  Moreover, Claimant had the opportunity to present contrary legal authority to the Appeals Council.  If Claimant's view of his due process rights would hold true, an ALJ would be required to allow a claimant to preview his decision in the event

the claimant wished to present contrary legal authority.  This is
the purpose of an appeal.  Claimant's assertion of a constitutional
violation in this regard is without merit.

## Listings

Claimant contends her conditions meet Listings 11.02, 11.03,
and 12.07.   The ALJ determined Claimant suffered from the severe
impairment of epilepsy.   (Tr. 12).   He then concluded Claimant
could perform work at all exertional levels with the non-exertional
limitations  of  only  occasional  balancing,  stooping,  kneeling,
crawling, and crouching, climbing stairs.   The ALJ also determined
Claimant  could  not  climb  ladders,  drive,  or  work  in  hazardous
environments such as unprotected heights or near dangerous moving
machinery.   (Tr. 16).

Claimant  states  that  she  experiences  mixed  major  motor
seizures,  breakthrough  seizures,  and  lapse  absence  or  petit  mal
seizures.   On December 5, 2007, Claimant was evaluated by Dr. E.M.
Sundaram, Jr.  Dr. Sundaram noted Claimant carried a diagnosis into
the evaluation of a long-standing seizure disorder, a combination
of possible partial and generalized seizures for which she was
treated with a variety of medications.   He noted, however, that
Claimant had poor control over her "spells" with the medication or
she suffered side effects.   Dr. Sundaram opined that he was "very

doubtful of true seizures." He believed them to be non-epileptic seizures because Claimant was on therapeutic doses of medications but still had spells. Dr. Sundaram recommended a video electroencephalogram to see if the spells could be caught on tape. (Tr. 470). On February 11, 2008, Claimant was hospitalized for the video electroencephalogram. She did not have an episode until February 13, 2008 when, during her sleep, Claimant had rhythmic movement with some asynchronized jerking of the right leg with pelvic thrusting. It lasted approximately less than one minute. Claimant was not aware of the episode and went back to sleep. Other than the movements, no EEG changes such as complex partial seizures or generalized seizures were noted. Dr. Sundaram concluded Claimant was having non-epileptic seizures. (Tr. 653-54).

The requirements of Listing 11.02 and 11.03 are as follows:

11.02 Epilepsy--convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.

1.  A.  Daytime episodes (loss of consciousness and convulsive seizures) or

    B.  Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

11.03 Epilepsy--nonconvulsive epilepsy (petit mal,

psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Claimant bears the burden of demonstrating her condition meets the requirements of any particular listing. Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992). In order to meet a listing, Claimant must demonstrate she meets or equals all of the specified medical criteria of the particular Listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Dr. Sundaram concluded Claimant's seizures were non-epileptic in nature, taking them outside the consideration for these Listings. Moreover, given the observations by medical personnel, Claimant's assertions of more frequent seizure activity than observed creates serious doubts as to her claims' veracity.

Claimant also contends the ALJ should have found her condition met Listing 12.07. This listing requires the following:

12.07 Somatoform Disorders: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.

1. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented by evidence of one of the following:

1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

a. Vision; or

b. Speech; or

c. Hearing; or

d. Use of a limb; or

e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or

f. Sensation (e.g., diminished or heightened).

3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1.


Again, Claimant has failed to demonstrate the requirements of

this criteria.  Claimant has not shown the marked limitations

required to meet this Listing.

## Consideration of Medical Source Opinion

Claimant next asserts the ALJ failed to properly consider the opinion of Claimant's treating physician's nurse.  The nurse practitioner completed a form on November 21, 2008 which states Claimant experienced abnormal loss of consciousness with non-epileptiform seizures.  The nurse states the loss of consciousness may cause Claimant to fall and that she should not work.  The report further finds Claimant could not be made employable by treatment.  (Tr. 686).  The ALJ did not reference this report in his decision.

The ALJ is required to consider all medical opinions.  Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); Soc. Sec. R. 96-5p.  The nurse practitioner should have been considered either an acceptable medical source or an other source and not simply been ignored.  On remand, the ALJ shall consider this opinion, determine the weight it should be afforded, and explain the basis for acceptance or rejection of its conclusions.

Claimant also suggests that the ALJ accepted the portion of the opinions of state agency physicians who found Claimant had no physical limitations but rejected the portion of the report that found Claimant had mental limitations.  The manner in which the ALJ addressed these opinions does appear to have inconsistencies on the

10

face of the decision.  On remand, the ALJ shall explain in greater detail and specificity for accepting these opinions when they support a finding of non-disability but seemingly rejecting them when they do not support such a finding.

Claimant further asserts the ALJ should have considered further the low GAF findings by the consultative examiner. Claimant was found to have a GAF of 48.  Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment.  "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.  Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).  The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability.  *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)).  The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere.  Lee, *supra* at 3.  However, a GAF of 50 or less does suggest an inability to keep a job.  Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)).  Specifically, the DSM-IV-TR, explains that a GAF score between 41 and 50

11

indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF of between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed person avoids friends, neglects family, and is unable to work . . . ." while a GAF between 41 and 50 encompasses a person who shows "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Id. Given that Claimant's low GAF scores are not taken in isolation but as a factor among the other medical evidence of limitation, the ALJ shall re-evaluate his consideration of Claimant's low GAF score in the context of her ability to maintain employment.

## Step Four Analysis

In light of the fact the case is being remanded for further consideration of evidence of limitation, the ALJ shall re-evaluate his findings at step four as necessary.

## Credibility Determination

The ALJ called Claimant's credibility into question. Claimant's testimony regarding the frequency of her seizure activity and the limiting effects of it was simply not supported by the medical record.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

13

The ALJ did not err in his credibility findings. Of course, should the ALJ determine that other evidence changes his evaluation of Claimant's credibility, he may revisit the issue on remand.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 26th day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE